UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | | | |
|---|---|---|---|
| CHARLES N. HODGE | ) | | |
| | ) | | |
| v. | ) | No. | 4:06-cv-52/4:05-cr-27 |
| | ) | | *Judge Edgar* |
| UNITED STATES OF AMERICA | ) | | |

**MEMORANDUM**

Federal prisoner Charles N. Hodge ("Hodge") moves for post-conviction relief pursuant to 28 U.S.C. § 2255 (Court File Nos. 1 & 2). Hodge contends he was deprived of his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. In addition, Hodge claims the indictment failed to properly charge an element of the offense in Count Four, and that he is actually innocent of the crimes to which he pleaded guilty. The United States opposes the motion.

After reviewing the record, the Court concludes that Hodge's § 2255 motion will be **DENIED**. The record conclusively shows that Hodge is not entitled to any relief under 28 U.S.C. § 2255. Thus, there is no need for an evidentiary hearing.

**I. Non-Dispositive Motions**

Presently before the Court are three non-dispositive motions filed by Hodge. The first motion before the Court is Hodge's motion to amend his § 2255 motion (Court File No. 10). Hodge seeks to amend his § 2255 motion asserting that his Guideline range should have been reduced based upon Amendment 599. The government opposes the motion (Court File No. 14). The government does not assert the timeliness bar, even though the amendment was filed more than two years after Hodge's judgment became final, because they maintain that Amendment 599 is inapplicable to

1

Hodge's sentence. Hodge, relying upon Amendment 599, argues the probation officer should not have applied a four-level enhancement to his offense level calculations on the § 922(g) conviction pursuant to § 2K2.1(b)(5) based upon Hodge's use of the firearm in connection with the shooting of the victim in this case (PSR ¶¶ 11, 19).

Amendment 599, effective November 1, 2000, amended the Application Notes to § 2K2.4 to explain under what circumstances a defendant who is convicted of violating 18 U.S.C. §§ 844(h), 924(c), or 929(a) may have his offense level enhanced on another conviction based upon possessing, brandishing, using or discharging a firearm in connection with an underlying offense. See U.S.S.G. § 2K2.4, comment (n.4). In such a case, a firearms enhancement may be considered impermissible double counting.

Hodge was convicted of violations of § 922(g) and 21 U.S.C. § 846, and was not convicted of violations of §§ 844(h), 924(c), or 929(a). "It is clear that Amendment 599 does not apply to convictions obtained under 18 U.S.C. § 922(g) . . [and] 21 U.S.C. § 846. . . ." *Little v. United States*, 242 F.Supp. 2d 478, 481 (E.D. Mich. 2003); *also see United States v. Friend*, 303 F.3d 921 (8th Cir. 2002) (Amendment 599 does not apply to convictions for being a felon in possession of a firearm). Thus, Amendment 599 is not applicable to Hodge's sentence.

Moreover, Hodge's guideline range was determined based upon his status as a career offender. Thus, it would not matter if the guideline calculation for the conviction of being a Felon in Possession of a Firearm in his PSR was incorrect (as Hodge claims)—which it is not—because the career offender guidelines determined Hodge's sentence. Since the career offender guidelines are higher and since those are the guidelines under which Hodge was sentenced, the felon in

2

possession and attempt to manufacture methamphetamine guideline calculations were basically unnecessary.

Thus, Hodge's is not entitled to any relief on his claim regarding Amendment 599. Accordingly, Hodge's motion to amend will be **DENIED as FUTILE** (Court File No.10).

Also before the Court is Hodge's motion to submit newly discovered evidence (Court File No. 11). The Government opposes the motion (Court File No. 14). Hodge requests the Court to consider a TBI laboratory report that he asserts he was unaware of at the time of sentencing. According to Hodge, the report shows that the gray substance submitted for testing in this case allegedly did not contain methamphetamine and had he known about the report, he would have pleaded not guilty; insisted that counsel file a suppression motion; and objected to the drug amount for which he was held accountable.

As the government points out, it appears that Hodge is misinterpreting the report. The report reflects that exhibit 03-a was 40 mL(31.0g) of a liquid containing a detectable amount of pseudoephedrine and Exhibit 04-a was 1.1g of a gray substance containing a detectible amount of methamphetamine a schedule II drug (Court File No. 11, p. 5). Had these two samples not contained a detectible amount of the identified substances, the identified substances would not have been indicated on the report.

In addition, at the time of Hodge's plea, the government presented a factual basis and stated that the search of Hodge's residence resulted in the seizure of a "small amount of methamphetamine" and components used to manufacture methamphetamine, including pseudoephedrine, iodine, red phosphorous, and empty Heet bottles (Crim. Court File No. 35, Rearraignment Transcript, pp. 14-

3

15). Thus, the laboratory report is consistent with the information stated in support of Hodge's plea of guilty, which he admitted was true.

Moreover, Hodge was not convicted of possessing methamphetamine or manufacturing methamphetamine, rather he was convicted of attempting to manufacture methamphetamine based upon the evidence of a methamphetamine lab at his residence. The evidence of the methamphetamine lab, alone, was sufficient to support Hodge's conviction for attempting to manufacture methamphetamine in violation of 21 U.S.C. § 846.

Finally, Hodge's sentence was based on his status as a career offender and was not based on a specific amount of methamphetamine. Thus, not only does the lab report reflect the sample contained a detectible amount of methamphetamine, Hodge's conviction for attempting to manufacture methamphetamine was not dependent on the presence of methamphetamine but rather, was dependent on the meth lab components that were seized, and his sentence was based on his career offender status, not a drug quantity. Accordingly, since the lab report provides no basis for relief, the Court will **DENY** Hodge's motion to submit this newly-discovered evidence since it is immaterial (Court File No. 11).

Because the Court concludes that an evidentiary hearing is not warranted and Hodge's § 2255 motion will be denied, his motion to appoint counsel will be **DENIED as MOOT** (Court File No. 12).

## II.  Standard of Review

A federal prisoner may file a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the United States Constitution. To obtain relief under § 2255 based on an alleged constitutional error, Hodge bears

4

the burden of establishing an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir.1999). To warrant relief under § 2255, Hodge is required to show a fundamental defect in the criminal proceedings which inherently results in a complete miscarriage of justice or an egregious error that rises to the level of a violation of constitutional due process. *Davis v. United States*, 417 U.S. 333, 346 (1974); *Griffin*, 330 F.3d at 736; *Gall v. United States*, 21 F.3d 107, 109 (6th Cir.1994).

### III.     Procedural History

On June 30, 2005, a grand jury for the Eastern District of Tennessee, Winchester Division, named Hodge in a single-defendant, four-count indictment (Crim. Court File No. 1). On January 30, 2006, Hodge entered guilty pleas to being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count One), and attempting to manufacture methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C) (Count Four) (Crim. Court File No. 26). Hodge was sentenced to the custody of the Bureau of Prisons for 160 months which consisted of 120 months as to Count 1, and 160 months as to Count 4, to run concurrently; a supervised release period of three years; and assessed a $200.00 special assessment. Judgment was entered on May 1, 2006 (Crim. Court File No. 30). Hodge waived his right to appeal his conviction, thus the judgment was considered final on May 15, 2006. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) ("an unappealed federal criminal judgment becomes final ten days after it is entered"). On September 14, 2006, Hodge timely filed this § 2255 motion and seven months later he timely filed a supplemental motion (Court File No. 2).

5

**IV.     Facts**

The Presentence Investigation Report ("PSR") described the following offense conduct:

11.     Prior to the instant offense, the defendant sustained at least three prior felony convictions. On January 7, 2005, a Van Buren County, Tennessee district attorney investigator was called to investigate a shooting that occurred at Charles Hodge's residence. Upon arrival, the investigator talked to Mr. Hodge after reading him his Miranda rights. Mr. Hodge admitted shooting Mr. Brock in self-defense. Hodge stated that Brock had come to his house and broken the windshield out of Mr. Hodge's truck after Hodge told him that he could not use it anymore. Hodge stated that he saw Brock with a firearm in his hand. Hodge then went inside his house and got a .22 caliber rifle and shot Brock once, striking him in the head. Brock ran toward the road and a green truck picked him up and took him to the hospital. Mr. Brock survived this incident. Officers searched the area where the victim had gone and did not find a weapon. The person who picked up Mr. Brock was also interviewed and stated that the victim did not have a weapon when they saw him. Hodge stated he kept his rifle near the rear door of his residence to get rid of owls and hawks that got his chickens.

12.     Mr. Hodge signed a consent to search his residence. During the search, officers located several items normally used during the manufacturing of methamphetamine such as: iodine, one bag of white powder, red phosphorous, peroxide, coffee filters, alcohol, and another shotgun in the bedroom. The official amounts of these items are unknown. Mr. Hodge admitted using methamphetamine approximately two weeks before the instant offense. According to the Bureau of Alcohol, Tobacco, and Firearms, both of Mr. Hodge's weapons did travel in and affect interstate commerce.

**V.     Analysis of Claims**

Hodge raises four instances of alleged ineffective assistance of counsel in his § 2255 motion and amendment. In addition, he claims Count Four is constitutionally defective because it allegedly failed to charge a required element of the offense and finally, he claims he is actually innocent. The Court will address all of the ineffective assistance of counsel claims first.

   *A.     Ineffective Assistance of Counsel*

6

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The Strickland test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.*, counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense, *i.e.*, deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88.

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and that conduct cannot be viewed in hindsight, but must be evaluated for reasonableness within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 689-90. A defendant's challenge to such decisions must overcome a presumption that
the challenged actions might be considered sound trial strategy. *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

When a defendant challenges his guilty plea, to establish the prejudice prong, he must demonstrate that without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319

7

(6th Cir. 1998), (quoting *Strickland v. Washington*, 466 U.S. at 690. "An error of counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id*. at 691.

As an initial matter, the Court observes that Hodge has failed to meet the prejudice prong as to any of his four claims of ineffective assistance of counsel because he has failed to allege, much less demonstrate, a reasonable probability that he would have gone to trial but for counsel's alleged errors. Indeed, the only relief Hodge requests is that the Court re-sentence him. Thus, Hodge has failed to demonstrate any resulting prejudice as a result of counsel's alleged ineffective assistance. Furthermore, as explained below, Hodge has failed to demonstrate counsel was ineffective.

### 1. *Counsel Failed to Object to Prior Convictions*

Hodge contends counsel failed to object to his prior convictions in this Court for possession with intent to distribute marijuana—three controlled substance offenses which Hodge mistakenly labels as serious drug offenses. Hodge claims the Court improperly sentenced him as a career offender because the statutory maximum sentence applicable to each of his prior marijuana convictions in this Court was five years pursuant to 21 U.S.C. § 841(b)(1)(D), thus these convictions are not predicate "serious drug offense."

It appears that Hodge has confused the definition of "a controlled substance offense" as required by the career offender provisions in the Guidelines, U.S.S.G. § 4B1.1, which was the basis for Hodge's sentence, with the definition of "a serious drug offense" as required by the Armed Career Criminal provisions of the Guidelines, U.S.S.G. § 4B1.4, which is defined in 18 U.S.C. § 924(e) and was not the basis for his sentence.

8

A "career offender" is defined in the Guidelines as follows:

(a) A defendant is a career offender if (1) the defendant was a least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or *a controlled substance offense*; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (emphasis added). Note 1 of the Commentary to § 4B1.1 states that a "controlled substance offense" is defined in U.S.S.G. § 4B1.2, which provides that a "controlled substance offense" is "an offense under federal or state law, *punishable by imprisonment for a term exceeding one year*, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b) (emphasis added). Hodge's prior drug convictions in this Court were punishable by imprisonment for a statutory maximum term of five years, thus these convictions are predicate convictions, and petitioner was properly classified as a career offender.

It appears that Hodge has mistakenly relied upon the definition of serious drug offense in an inapplicable statute, 18 U.S.C. § 924(e), which is not identical to the definition of controlled substance offense used in § 4B1.1, the applicable Career Offender Sentencing Guideline provision in this case.

Hodge was sentenced as a career offender under the sentencing guidelines, thus, his prior marijuana convictions are "controlled substance offenses" under § 4B1.1. Hence, counsel could not have made a valid objection on the basis that Hodge now suggests. Counsel's failure to raise a meritless objection is not deficient performance. Accordingly, Hodge has failed to satisfy either

prong of the *Strickland* test, and he is not entitled to relief on this claim.

        2.        *Blakely* Claim

Hodge claims counsel was ineffective for failing to contest this Court's finding that his prior marijuana convictions constituted predicate "serious drug offenses" for purposes of his career offender status. Hodge claims counsel should have argued that *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004) forbids the Court from making any factual findings which increase the punishment, unless those findings are reflected in the jury verdict or admitted by the defendant. Hodge acknowledges that *Blakely* excludes prior convictions from this requirement but contends that the Court committed error in determining the prior crimes were serious drug offenses.

The Court has previous determined *supra* in Section IV.A.1. of this memorandum opinion that the prior crimes were properly found to be controlled substance offenses. Thus, Hodge is mistaken in his claim that the Court determined his prior crime was a serious drug offense. Moreover, since the law permits the Court to make findings to determine whether a prior conviction qualifies as a predicate conviction for career offender purposes, *United States v. Hollingsworth*, 414 F.3d 621, 623 (6th Cir. 2005) (whether prior conviction is a "crime of violence" under the Guidelines is a fact that need not be charged or determined by a jury under the *Apprendi* exception for prior convictions), Hodge has not demonstrated counsel was deficient for failing to contest the Court's finding as to his prior drug offenses or that he suffered any prejudice. *Apprendi* does not apply to sentence-enhancement provisions based upon prior criminal convictions. Thus, the increase in Hodge's sentence based on the determination that he was a career offender because of his prior

10

convictions does not violate the ruling in *Apprendi*. Accordingly, this claim provides no basis for relief.

### 3. Failure to Object to Four-Level Enhancement Under § 2K2.1(b)(5)

Hodge claims counsel was ineffective for failing to contest the application of the United States Sentencing Guidelines enhancement under § 2K2.1(b)(5), which provides for a four-level increase if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5).

When initially calculating Hodge's advisory Guideline range, the probation officer applied the § 2K2.1(b)(5) enhancement. U.S.S.G. § 2K2.1(b)(5) provides for a four level enhancement if the defendant used or possessed any firearms or ammunition in connection with another felony offense. Because Hodge used the .22 caliber rifle to shoot Brock in the head, constituting an attempted murder, the enhancement was applied. However, the enhancement became immaterial to the calculation of Hodge's Guideline range since he was classified as a career offender. Thus, it would not matter if the four-point increase in his base offense level under § 2K2.1(b)(5) enhancement was incorrect, which it is not, because Hodge was sentenced under the career offender guidelines. Hodge's total offense level with the § 2K2.1(b)(5) enhancement was 25. However, due to his status as a career criminal under § 4B1.1(a), his total offense level was calculated to be a 32 less three levels for acceptance of responsibility, for a final offense level of 29 (Presentence Investigation Report "PSR" p. 6).

Therefore, the four-level increase did not affect Hodge's sentence because his base level offense was 24, and the additional 4 levels increased the sentencing level to 28. However, Hodge was sentenced at offense level 29 after a 3 level reduction for acceptance of responsibility due to the

11

career offender provisions of U.S.S.G. § 4B1.1. Consequently, Hodge cannot show counsel was ineffective or resulting prejudice as a result of counsel's failure to challenge the § 2K2.1(b)(5) four-level increase. Accordingly, this claim of ineffective assistance of counsel fails.

      4.  *Counsel Failed to Challenge the Searches*

Hodge contends that counsel was ineffective for failing to challenge the search of his residence because the consent forms were forged when the officer marked out the word "vehicle" and substituted the word "property" in its place (Court File No. 2, Consent to Search Property Forms). The forms specifically state that "I, Charles Hodge, have been asked to consent to the search of the following described property, Rt. 1 Bx 342, Spence TN." The search of property is referred to throughout the consent form, and the officer's substitution of property in place of the word vehicle in the last sentence was not improper. Moreover, Hodges signature on the consent form and his admission that he gave written consent to search his residence during his rearraignment demonstrate that a challenge to the change in the consent form would have been frivolous. Thus, counsel was not deficient for failing to raise the issue as a basis for suppression. Petitioner has met neither of the *Strickland* prongs with this claim.

Hodge also claims counsel was deficient when he failed to pursue an investigation that would have revealed Hodge did not have the authority to consent to the search of the residence; and thus, the officers would have had no basis for seizing the weapons or evidence of methamphetamine manufacturing. Hodge has submitted affidavits from family members averring Hodge's children owned the premises at the time of this incident; his son owned the rifle that was seized during the search; and Hodge was not living at the residence at the time of the search, but was residing with a friend (Court File No. 2).

12

This claim lacks credibility because it is contradicted by the record. The consent forms Hodge signed specifically state: "I hereby acknowledge that the above described property is presently in my custody and control." Although the affidavits submitted by Hodge seemingly reflect the residence was unoccupied and the only reason Hodge was on the property was to repair his vehicle, those same affidavits contradict those indications because the affidavits state the house included normal household items. For example, the affidavits reflect that once law enforcement left, the family went into this allegedly unoccupied house and drank coffee. In addition, at the rearraignment hearing, Hodge confirmed the truthfulness and accuracy of the following facts presented by the government which prove the house was his residence:

> MR. NEFF: On January 6 of 2005, the Van Buren County DA Investigator Jason Rowland was called about a shooting *at the defendant's residence*. Rowland went to *the defendant's residence,* advised him of his rights, which the defendant waived, and obtained a written *consent to search from the defendant for the residence. Inside of the residence* officers found a Marlin .22 caliber rifle. The defendant stated that he had gotten into a dispute with the victim of the shooting about the fact the victim had borrowed his truck and not returned it. As a result that, [sic] of that dispute, the fact the defendant said that the victim had a gun, he went back inside and got the rifle which he said he uses for shooting owls and hawks that attack his chickens, came back out and shot at the victim.
>
> There was a second search the next day pursuant to a second consent form, which yielded, also, a second firearm, small amount of methamphetamine and meth components, including iodine, red phosphorous, ephedrine, and empty Heet bottles.
>
> THE COURT: All right. Mr. Hodge, did you hear what Mr. Neff said there?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And are those facts true?
>
> THE DEFENDANT: Yes, sir.

(Crim. Court File 35, p. 14-15). Additionally, Hodge did not object to the PSR, and the offense

13

conduct sections stated that Hodge signed a form consenting to a search of his residence (PSR, ¶ 12). Therefore, counsel was not deficient for not investigating whether Hodge's resided at the searched residence because Hodge consistently stated the residence was his and he had authority to consent to the search. Moreover, Hodge does not claim he ever told defense counsel the residence was not his or that he was not residing at the residence.

In addition, even if counsel had investigated and learned these alleged facts, they provide no basis for suppression of the evidence. Whether Hodge's children actually own the house is immaterial because Hodge appeared to the officers to be residing there and to be clothed with authority to consent and there is no violation of the Fourth Amendment if, under the totality of the circumstances, the officer performing the search has relied in good faith on a person's apparent authority. *Illinois v. Rodriguez,* 497 U.S. 177, 188-89 (1990). "When one person consents to a search of property owned by another, the consent is valid if the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *United States v. Campbell*, 317 F.3d 597, 608 (6th Cir. 2003) (citations and internal quotations omitted). The burden is on Hodge to demonstrate by a preponderance of the evidence each of his claims. Thus, he must demonstrate that no reasonable person would have believed that he had apparent authority to consent to the search of the residence in order to show a Fourth Amendment violation. This he has not done.

In sum, Hodge has provided no evidence demonstrating he informed counsel he did not have authority to consent to the search. Hence, counsel was not deficient in failing to challenge Hodge's written consent and file a suppression motion. In addition, even if we assume counsel was deficient, there is nothing in the record indicating it was unreasonable for law enforcement to believe Hodge

14

had the authority to consent to a search of the residence. Thus, Hodge suffered no prejudice as there was no Fourth Amendment violation.

As for the alleged ownership of the rifle seized from the residence, it appears Hodge's son is claiming ownership (Court File No. 2, Affidavit of Charles Wayne Hodge). However, ownership is immaterial because Hodge admitted that when he got into the dispute with the victim of the shooting, he got the rifle which he claimed to use for shooting owls and hawks that attacked his chickens. Regardless of who owns the weapon, it was unlawful for Hodge to possess any weapons and his conviction under 18 U.S.C. § 922(g) was for possessing a firearm, not for owning a firearm. Accordingly, Hodge is not entitled to any relief on this claim since he has shown neither deficient performance by defense counsel nor prejudice.

### B. *Substantive Claims Hodge Waived in his Plea Agreement*

Hodge raises two more claims in his amended § 2255 motion: (1) denial of Fifth Amendment right to be charged by a grand jury and (2) actual innocence. Hodge's plea agreement contains the following provision:

> The defendant expressly waives the right to appeal his conviction on any ground, other than ineffective assistance of counsel or prosecutorial misconduct. The defendant further agrees not to file any motions or pleadings pursuant to 28 U.S.C. § 2255 on any ground, other than ineffective assistance of counsel, prosecutorial misconduct, or subsequent change in the interpretation of the law which may affect his case. Thus, defendant knowingly, intentionally, and voluntarily waives his right to collaterally attack the plea being offered in the instant case.

(Plea Agreement, ¶ 17). At the rearraignment the Court confirmed that Hodge knowingly was waiving this right:

> THE COURT: Okay. One of the ways that you would have normally to appeal your sentence in this case would be to file what we call a habeas corpus

15

> petition, sometimes it's a pleading- - it's referred to in Paragraph 17 of your agreement here as a motion or pleading pursuant to 28, United States Code, Section 2255. I just want to let you know that except for the reasons expressed here in the agreement you're giving up your right to do that.
>
> THE DEFENDANT: Yes, Sir

(Court File No. 35, Rearraignment Transcript, p. 8-9).

The right to appeal and the right to seek post-conviction relief are statutory rights that may be waived. A knowing and voluntary waiver in a plea agreement not to file any motions or pleadings pursuant to 28 U.S.C. § 2255 is an effective means to bar such relief. *Palmero v. United States*, 101 F.3d 702 (6th Cir., Nov. 21, 1996) (unpublished table decision) 1996 WL 678222, at *2; *United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996); *United States v. Ashe*, 47 F.3d 770, 775 (6th Cir.), *cert. denied*, 516 U.S. 859 (1995); *United States v. Wilkes*, 20 F.3d 651 (5th Cir. 1994). The reason Hodge is barred from raising these two claims is because the waiver contained in his plea agreement is sufficient to bar relief in this case.

Hodge is bound by his plea agreement wherein he expressly "agree[d] not to file any motions or pleadings pursuant to 28 U.S.C. § 2255 on any ground, other than ineffective assistance of counsel, prosecutorial misconduct, or subsequent change in the interpretation of the law which may affect his case." The Sixth Circuit has determined that a criminal defendant may waive "'any right, even a constitutional right' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001) citing, *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995), *cert. denied sub nom. Daughtrey v. United States*, 516 U.S. 859 (1995). Thus, plea agreements that include waivers of § 2255 rights are generally enforceable if the defendant entered into the waiver agreement knowingly, intelligently, and voluntarily. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001); *also see Watson v. United States*, 165 F.3d 486, 489 N. 4 (6th Cir. 1999).

16

Hodge does not claim nor does the record indicate that he did not knowingly, intelligently, and voluntarily waive his § 2255 rights. Accordingly, since Hodge's last two claims are not covered by any of the grounds reserved by him in the plea agreement, he has waived his right to bring this claim.

Assuming arguendo Hodge could show that the waiver in his plea agreement was not voluntary and he could show cause for the procedural default and actual prejudice, the Court nevertheless concludes that Hodge's claims are without merit. Initially, the Court observes that Hodge neglects to identify the omitted element from the indictment which he claims resulted in the indictment failing to charge an offense. The Court presumes he is claiming his prior felony drug conviction, which increased the statutory maximum sentence from twenty to thirty years under § 841(b)(1) had to be charged in the indictment. This claim is legally flawed because a prior conviction does not have to be charged in the indictment. *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (*"other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." *Id.* at 490 (emphasis added). Furthermore, Hodge was sentenced to 160 months, which is below the twenty-year maximum applicable even without considering Hodge's prior felony drug conviction. Thus, in addition to failing to demonstrate the indictment was flawed, Hodge has failed to demonstrate prejudice. Accordingly, he is not entitled to any relief on his claim challenging the validity of Count Four in the indictment.

As for Hodge's claim of actual innocence, he claims that because of alleged "falsification of consent forms, fraud, and coercion engaged in by law enforcement officers, [he] was falsely

17

arrested

and charged with crimes for which he was innocent." (Court File No. 2, p. 8). The record contradicts Hodge's claim.

The United States Supreme Court has held an actual innocence claim can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). In order to establish he is "actually innocent" Hodge "must show that it is more likely than not that no reasonable juror would have found" him "guilty beyond a reasonable doubt." *Id*. at 327. "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. The Supreme Court cautioned however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" The same standard applies in cases where a defendant had pled guilty and waived his right to trial. *See Bousley*, 523 U.S. at 623-24. In addition, "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Id.* at 624.

Hodge has failed to present any evidence that raises any doubt about his guilt and undermines confidence in the result of his criminal case. None of the affidavits submitted by Hodge prevents this Court from having confidence in the outcome of the case. The affidavits submitted by Hodge do not undermine his guilty plea or demonstrate his factual innocence, but rather go to the validity of the search; specifically the ownership of the residence and firearms. The affidavits do

18

not contradict the fact that Hodge possessed the rifle, with which he had just shot a man at the residence. Nor do the affidavits contradict Hodge's apparent authority to consent to the search of the residence or his admissions during his rearraignment. Thus, he is bound of his guilty plea.

In summary, Hodge expressly waived the right to collaterally attack his conviction in the plea agreement. In addition, an unconditional plea of guilty waives all non-jurisdictional defects and operates as an admission of actual and factual guilt. *See United States v. Broce,* 488 U.S. 563, 574-75, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (A guilty plea is more than a confession admitting the accused did various acts, it is an admission he committed the crime); *Tollett v. Henderson,* 411 U.S. 258, 266-67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Consequently, in light of the undisputed circumstances described in the PSR and Hodge's admissions at this plea hearing, the Court concludes Hodge cannot show the requisite factual innocence. The record supplies sufficient evidence of culpability, and Hodge's plea serves as an admission that he is not innocent of the crimes charged.

Accordingly, Hodge is not entitled to any relief on this claim.

## VI. CONCLUSION

Accordingly, Hodge has failed to establish a plausible claim that would warrant an evidentiary hearing. *See United States v. Tarricone*, 996 F.2d 1414, 1417-18 (2nd Cir. 1993) (noting that to prevail on a motion for hearing, petitioner must establish he has a plausible claim). For the reasons explained above, Hodge's conviction and sentencing are not in violation of the Constitution

or laws of the United States. Accordingly, Hodge's claims do not entitled him to § 2255 relief and

19

his § 2255 motion will be **DENIED WITH PREJUDICE** (Court File Nos. 1 & 2).

    A separate judgment order will enter.

                                      */s/ R. Allan Edgar*
                                    R. ALLAN EDGAR
                      UNITED STATES DISTRICT JUDGE